UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK        FOR PUBLICATION

In re:

                                    Case No. 12-14965 (MG)
                                    Chapter 7

TPG TROY, LLC,

                            Alleged Debtor.

In re:

                                    Case No. 12-14966 (MG)
                                    Chapter 7

T3 TROY, LLC,

                            Alleged Debtor.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
INVOLUNTARY PETITIONS**

*A P P E A R A N C E S:*

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
*Counsel for TPG Troy LLC and T3 Troy LLC*
1633 Broadway
New York, New York 10019
By:    Andrew K. Glenn, Esq.
         Michele L. Angell, Esq.

STAMELL & SCHAGER, LLP
*Counsel for SPQR Capital (Cayman) Ltd.,*
*Lansdowne Capital, S.A., and Crest One SpA,*
*Petitioning Creditors*
1 Liberty Plaza, 35th Floor
New York, NY 10006
By:    Jared B. Stamell, Esq.
         Andrew R. Goldenberg, Esq.

1

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

On December 21, 2012 (the "Petition Date"), SPQR Capital (Cayman) Ltd., Lansdowne Capital, S.A., and Crest One SpA (together, the "Petitioners") filed these involuntary Chapter 7 cases against TPG Troy LLC and T3 Troy LLC (the "Troy Entities"). Pending before the Court in both cases is the *Motion of TPG Troy LLC and T3 Troy LLC to Dismiss Involuntary Petitions* ("Motion," ECF Doc. # 11),[1] which is supported by the Declaration of Lauren P. Rubin (ECF Doc. # 12). Petitioners filed an objection to the Motion (ECF Doc. # 33). The Troy Entities filed a Reply (ECF Doc. # 35), which is supported by the Declaration of David J. Abrams (ECF Doc. # 36).[2] A hearing on the Motion was held May 1, 2013.

The Petitioners commenced these cases against the Troy Entities to recover what they have not yet been able to recover in numerous lawsuits in multiple other venues. The Petitioners allege that the Troy Entities, which were dissolved in 2007, should be held liable for notes issued by a non-debtor because the Troy Entities were the alter egos of the issuer that defaulted on the notes. The Court finds that the Involuntary Petitions must be dismissed because the alleged alter ego claims are the subject of a bona fide dispute and, in addition, the Troy Entities have established grounds for abstention under section 305(a)(1) of the Bankruptcy Code. Therefore, the Court **GRANTS** the Troy Entities' Motion and **DISMISSES** these cases. In addition, within twenty-one (21) days after the date of this Order, the Troy Entities may apply to the Court, upon a proper showing, to recover their costs, reasonable attorney's fees, and damages, as provided in section 303(i) of the Code.

---

[1] As the filings in both cases are identical, all ECF document references will be from the TPG Troy LLC case, Case No. 12-14965, unless otherwise indicated.

[2] On April 29, 2013, the Petitioners filed a Sur-Reply (ECF Doc. # 40) in violation of the briefing schedule and without authorization from the Court. Upon request of the Troy Entities, the Court struck the Sur-Reply and annexed declarations at the hearing on the Motion.

2

## I.    BACKGROUND

Petitioner SPQR Cayman is a Cayman Islands holding company affiliate of SPQR Capital LLP ("SPQR Capital"), a London based hedge fund that has commenced multiple actions in various courts based on the purported claims that are the basis for the Involuntary Petitions. Petitioner Crest One SpA is an entity with an office in Rome, Italy and is 100% owned by Petitioner SPQR Cayman. Petitioner Lansdowne Capital, S.A. is an entity with an office in Luxembourg and is 100% owned by Petitioner SPQR Cayman.

The Troy Entities were Delaware limited liability companies before the filing of a certificate of cancellation with the Delaware Secretary of State on December 17, 2007.  The Troy Entities' principal business was the ownership, directly or indirectly, of securities of TIM Hellas Telecommunications S.A. ("TIM Hellas"), a Greek *société anonyme* that provided mobile telecommunications services in Greece, and its affiliates.  When the Troy Entities dissolved in 2007, they ceased all business and stopped incurring debts, to the extent they ever did, and receiving income.  As a result of its dissolution, the Troy Entities have no fixed creditors and no material assets.

### A.    The Dispute

According to the complaints filed in the New York State Actions (defined below), in June 2005, the Troy Entities and six other investment funds (collectively, the "Sponsors") acquired a majority stake in TIM Hellas.  Around November 2005, the Sponsors bought the remaining shares of TIM Hellas, their TIM Hellas shares were cancelled, and they were awarded shares in Hellas Telecommunications, S.à.r.l. ("Hellas"), the ultimate parent of TIM Hellas and its affiliates.  The Sponsors paid approximately €1.4 billion for their interests in Hellas.  In addition, the Sponsors made "deeply subordinated shareholder loans" to Hellas that were evidenced by

3

convertible preferred equity certificates ("CPECs"). *See* Rubin Decl. Ex. E at Ex. B, at 55 n.6. The allegation in the New York State Actions is that Hellas's later redemptions of the CPECs from the Sponsors (the "CPEC Redemptions") were fraudulent conveyances that may be unwound under New York law.

The redemptions at issue in the New York State Actions arise from the issuance of payment-in-kind notes ("PIK Notes") and subordinated notes ("Sub Notes," and together with the PIK Notes, the "Notes"). On December 21, 2006, a Hellas subsidiary, Hellas Telecommunications Finance, S.C.A. ("Hellas Finance"), a Luxembourg partnership limited by shares, issued the PIK Notes with a total face value of €200 million. *See id.* at 11. The PIK Notes were to mature in 2015 and were guaranteed by another Hellas subsidiary, Hellas Telecommunications I, S.à r.l. ("Hellas I"), a Luxembourg private limited liability company.

Concurrently with the issuance of the PIK Notes, a separate Hellas subsidiary, Hellas Telecommunications (Luxembourg) II ("Hellas II"), a Luxembourg partnership limited by shares, issued the Sub Notes with a total face value of €960 million. The Sub Notes were to mature in 2015, and were subordinate to "all existing and future indebtedness of the issuer's subsidiaries," and to other obligations described in the offering memorandum. *See* Rubin Decl., Ex. F at Ex. B, at 245.

The offering memoranda for the Notes explained that Hellas would use a portion of the proceeds to redeem the CPECs from the Sponsors. *See* Motion ¶¶ 9, 11. These are the same redemptions that Petitioners seek to unwind in the New York State Action based on the PIK Notes (Index No. 653357/2011) (the "PIK Notes Action") and the Sub Notes (Index No. 653181/2011 (the "Sub Notes Action," and together with the PIK Notes Action, the "New York State Actions"). The offering memorandum for the PIK Notes further explained that neither

4

Hellas Finance nor Hellas I had any revenue-generating operations, and that their ability to pay the PIK Notes would depend on dividends from the guarantor's subsidiaries that might be insufficient to allow repayment to holders of the PIK Notes. Both Notes are subject to an indenture under which the Bank of New York served as trustee.

On or about December 21, 2006, Hellas redeemed CPECs from the Sponsors for an aggregate price of approximately €973.7 million. *See* Rubin Decl., Ex. E ¶ 137; Rubin Decl., Ex. F ¶ 149. In early 2007, the Sponsors sold all of their Hellas shares to Weather Investments S.p.A. ("Weather"), a company limited by shares under the laws of Italy, for approximately €3.4 billion (including assumed debt). *See* Rubin Decl., Ex. D at 3. It was not until October and November 2009, respectively, almost three years after Weather bought the shares, that the Issuer defaulted on the Notes.

### B.   The Litigations

Petitioners' affiliates have filed at least thirteen actions in the United States and Europe in the past two and a half years, including, most recently, these involuntary cases. Almost every action—and certainly those commenced in the United States—has been filed using virtually identical complaints and asserted against nearly identical groups of defendants. The Troy Entities have disputed liability in all actions in which they are defendants on numerous factual and legal grounds asserted in various court filings. Below is a summary of the various actions.

1.   *Four New York State Court Actions*.  Petitioners, through SPQR Capital's assignee, Cortlandt Street Recovery Corp. ("Cortlandt"),[3] initially filed suit in the Supreme Court

---

[3]  According to the Troy Entities, Cortlandt is nothing more than a "recovery" vehicle that was formed in New York for the purpose of bringing the New York State Actions. In an affidavit filed in the PIK I Notes Action, the Chief Operating Officer of SPQR Capital, Laurence Sudwarts, who also signed the Involuntary Petitions on behalf of SPQR Cayman, swore that "SPQR Capital and its affiliates own more than 25% of the outstanding" PIK Notes, and that SPQR Capital purportedly assigned to Cortlandt its "rights to recover payment of [the] PIK Notes . . . for enforcement in" the PIK Notes Action.

5

of New York on October 6, 2010 (Index No. 651693/2010) ("PIK Notes I Action"), seeking to recover on the same PIK Notes at issue in the PIK Notes Action. The five defendants in that action moved to dismiss in April 2011 on several grounds, including *forum non conveniens* and failure to state a cause of action. After full briefing, and five days before oral argument on the motion to dismiss was scheduled to occur, Cortlandt advised that it would seek to file an amended complaint. In January 2012, Cortlandt moved to amend the complaint and add the Troy Entities as two of thirty-four new defendants to the PIK Notes I Action. This case is ongoing and the Troy Entities are named defendants.

On November 15, 2011, Cortlandt filed the Sub Notes Action, naming the Troy Entities as two of thirty-three defendants. On December 5, 2011, Cortlandt, along with Wilmington Trust Company ("WTC"), as alleged indenture trustee, filed the PIK Notes Action, which is duplicative of the PIK Notes I Action. The Troy Entities are named as two of twenty-nine defendants. On April 25, 2012, all defendants moved to dismiss both of these complaints on several grounds, including prior dissolution, lack of personal jurisdiction, *forum non conveniens*, lack of standing and failure to state a cause of action. Oral argument was scheduled for May 2, 2013.

On or about December 5, 2011, Cortlandt and WTC also commenced an action in the Supreme Court of New York (Index No. 653363/2011) against Hellas Finance and Hellas I by filing a motion for summary judgment in lieu of complaint. That motion and Hellas Finance and Hellas I's cross-motion to dismiss have been fully briefed and were scheduled for oral argument in April 2013. This case is ongoing and the Troy Entities are not named defendants.

2.    *Two Delaware Federal Actions*. On December 12, 2011, Petitioners, through Cortlandt, and WTC filed complaints nearly identical to those filed in the New York State

6

Actions in the District Court of Delaware seeking to recover on the same PIK Notes and Sub Notes at issue in the New York State Actions (Case Nos. 11 Civ. 1271; 11 Civ. 1272) (the "Delaware Actions"). All defendants in the Delaware Actions were defendants in the New York State Actions, including the Troy Entities. Cortlandt and WTC ultimately dismissed the Delaware Actions on June 6, 2012.

3. *Three SDNY Actions*. On November 29, 2012, Petitioners, through Cortlandt, and WTC filed complaints nearly identical to those filed in the New York State Actions in the Southern District of New York seeking to recover on the same PIK Notes and Sub Notes at issue in the New York State Actions (Case Nos. 12 Civ. 8685; 12 Civ. 8686) (the "SDNY Actions"). All defendants in the SDNY Actions are defendants in the New York State Actions, including the Troy Entities. The defendants in the SDNY Actions expect to move to dismiss the complaints. In addition, on December 21, 2012, Cortlandt filed an action against Deutsche Bank AG, London Branch ("Deutsche Bank") in the Southern District of New York also seeking to recover on the Sub Notes (Case No. 12 Civ. 9351). Cortlandt seeks to hold Deutsche Bank liable as a signatory to the Sub Notes Indenture and for allegedly violating its obligation as the Security Agent under that Indenture. This action remains pending.

4. *Two California Actions*. On December 21, 2011, Petitioners, through Cortlandt, and WTC filed complaints nearly identical to those filed in the New York State Actions in the Central District of California seeking to recover on the same PIK Notes and Sub Notes at issue in the New York State Actions (Case Nos. 11 Civ. 10571; 11 Civ. 10573) (the "California Actions"). The California Actions were brought against four limited partners of a defendant in the New York State Actions, TPG Capital, L.P. The California Actions were voluntarily dismissed in May 2012. The Troy Entities were never named defendants.

7

5. *Two European Proceedings*. In November 2009, Hellas II, the issuer of the Sub Notes, was placed into administration, similar to a chapter 11 bankruptcy in the United States, in London, England under the auspices of the High Court of Justice of England and Wales (the "High Court of Justice"). On December 1, 2011, the administration was converted to a compulsory liquidation, and liquidators were appointed to represent Hellas II and its creditors (the "Liquidators"). In December 2011, the Liquidators commenced a lawsuit in Luxembourg (the "Luxembourg Proceeding") seeking relief under Luxembourg law concerning the CPEC Redemptions.

6. *The Liquidators' SDNY Bankruptcy Proceeding*. On February 16, 2012, the Liquidators filed a proceeding under chapter 15 of the Bankruptcy Code in this Court (Case No. 12-10631(MG)) (the "SDNY Bankruptcy Proceeding"). As part of the Liquidators' statement filed pursuant to Bankruptcy Rule 1007(a)(4), the Liquidators identified the Troy Entities on Schedule A as two of thirty-three "parties to U.S. Litigation" that are located in or outside the United States. On March 14, 2012, this Court issued an Order granting recognition of Hellas II's compulsory liquidation proceeding pending before the High Court of Justice as a foreign main proceeding, among other things.

### C. The Parties' Arguments

The Troy Entities argue that the petition should be dismissed for many reasons. First, Petitioners purportedly fail to meet their burden under section 303(b)(1) of the Code because the alleged claims are the subject of a bona fide dispute, both factually and legally. The Troy Entities strongly dispute Petitioners' claims for alter ego liability, as documented in their New York State Motions to Dismiss, which assert: (i) the Troy Entities are not signatories to the purported contracts at issue, and no alleged facts support alter ego liability for a breach of

8

contract action, (ii) the New York Business Corporation Law (the "NY BCL") does not apply to the redemptions in question because the NY BCL does not govern the conduct of foreign entities, as the issuers of the Notes and the Troy Entities all are, and (iii) the plaintiffs were notified of, and consented to, the transfers that plaintiffs now contend were fraudulent, thereby rendering them unavoidable as a matter of New York law. *See* Rubin Decl., Ex. A.

The Petitioners contend that their alter ego claims are not, in fact, subject to a bona fide dispute, either legally or factually. They assert that the parties are not arguing over the fact that the Petitioners are owed a debt or the amount of the debts owed to Petitioners—the parties only disagree about whether the Troy Entities are obligated to the Petitioners under the Notes based on alter ego liability. According to Petitioners, alter ego liability is sufficient to establish liability in an involuntary case, and there is "no doubt" that the Troy Entities were the alter ego of the Issuers. *See* Reply at 16. They additionally argue that the existence of pending litigation does not create a bona fide dispute.[4]

Second, the Troy Entities argue that Petitioners have failed to show that the Debtors are not generally paying their debts as they become due, based on the concept that the Troy Entities are dissolved and thus have no debts. As such, they argue, the Petitions should be dismissed pursuant to section 303(h)(1). Petitioners take issue with the Troy Entities' contention that, as dissolved entities, they are current on their obligations. Petitioners allege they have shown the existence of at least three creditors of the Troy Entities who have not been paid, based on the fact that "the Debtors are liable on the Notes as the alter ego of the Issuers and it is not disputed that the Notes are in default and the Creditors are owed €110,983,958.00." *See* Reply at 22.

---

[4] Oddly enough, Petitioners also assert that the Troy Entities are parties in only two pending New York state court actions, that this litigation has not proceeded beyond the dispositive motion stage, and that no determination has been made whatsoever as to the Debtors' liability.

9

Third, the Troy Entities contend that the Petitions should be dismissed because the putative Debtors no longer exist, and entities with no continued existence after dissolution cannot be debtors under the Code. In response, Petitioners argue that the Troy Entities cannot escape liability through dissolution because the long-standing rule is that debtors may not shield themselves from liability through dissolution after incurring such liability. Moreover, the Troy Entities are "vigorously" represented by competent and expensive counsel. *See* Reply at 9 (citing *Collins v. Kohlbert & Co. (In re Southwest Supermarkets, LLC)*, 325 B.R. 417, 431 (Bankr. D. Ariz. 2005) (denying a motion to dismiss an involuntary petition because "[i]f there is no such entity, then who hired [two prominent law firms] to seek its dismissal?")).

Petitioners also argue that a certificate of cancellation is not operative where the wind-up is improper. Here, Petitioners allege that the Troy Entities' affairs were not properly wound up because their assets have not been accounted for and distributed—in particular, the Troy Entities did not make provisions for such future liability as alleged. However, at the hearing, Petitioners acknowledged they have not moved to rescind the certificate of dissolution in Delaware.

Fourth, the Troy Entities claim the Petitions are facially deficient because the Petitioners failed to check the required boxes alleging that the putative Debtors are (i) persons against whom an order for relief may be entered under the Bankruptcy Code, and (ii) failing to pay their debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount. The Petitioners have since filed an amended petition which checks both boxes (ECF Doc. # 24).

Fifth, the Troy Entities argue that the Court should abstain from hearing the cases pursuant to section 305(a)(1) of the Code because the interests of all parties involved would be better served by a dismissal. In particular, there is pending non-bankruptcy litigation over

10

collection of the same purported claims underlying the Petitions; federal proceedings are not necessary because the state law claims can be adequately determined in the state court proceedings; there is no legitimate federal bankruptcy purpose to the cases, as there are no assets for distribution or known creditors of the Troy Entities; Petitioners improperly commenced the cases as a litigation tactic to coerce the Troy Entities into settling the claims; and there is already a foreign insolvency proceeding underway.

The Petitioners argue against abstention, claiming that adjudication in the bankruptcy court will better serve all creditors for many reasons: the New York litigation does not provide a means for achieving equitable distribution of the Debtors' assets; litigating in the bankruptcy forum will help centralize the various disputes related to this case; complete relief is not available outside of bankruptcy given the unavailability of chapter 5 powers, together with expansive disclosure and investigatory powers that are afforded a trustee under the Bankruptcy Code; and the Petitioners chose this forum to preserve claims under Bankruptcy Code sections 544 and 550 to avoid and recover fraudulent transfers, among other things.

In addition, the Troy Entities assert that they should be awarded fees, costs and damages under section 303(i) because the cases were filed in bad faith. Petitioners contend that the Debtors' bad faith claim and request for fees and damages is meritless.

## II.    DISCUSSION

### A. The Cases Must Be Dismissed Because There Is a Bona Fide Dispute Whether the Troy Entities are Liable to Petitioners as Alter Egos of the Issuers

Having previously commenced at least eleven actions in the United States, asserting essentially the same contested claims, the Petitioners commenced these involuntary bankruptcy cases. Liability of the Troy Entities is predicated on an alter ego theory. No contractual relationship exists between the Petitioners and the TPG Entities. Alter ego liability is

11

quintessentially a heavily fact driven theory of liability. Delaware law—the place where the TPG Entities were formed—imposes a heavy burden on a plaintiff to establish liability based on an alter ego theory. *See, e.g., Official Committee of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420 B.R. 112, 133-34 (Bankr. S.D.N.Y. 2009). Simply repeating the mantra of domination and control sufficient to disregard separate corporate existence does not make it so; and, it doesn't make it so in these cases. For present purposes it is sufficient to say that liability of the Troy Entities based on alter ego is the subject of a bona fide dispute.

　　　*1. Section 303(b)*

Section 303(b)(1) of the Bankruptcy Code provides, in pertinent part:

> An involuntary case . . . is commenced . . . . (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . .

11 U.S.C. § 303(b)(1). A creditor must satisfy both prongs of this test: the claim must not be subject to a bona fide dispute either as to liability or as to amount. *See In re Aminian*, No. 07 Civ. 12957 (AJG), 2008 WL 793574, at *2 (Bankr. S.D.N.Y. Mar. 25, 2008).

In determining whether there is a "bona fide dispute" under section 303(b)(1), the court "must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 117 (2d Cir. 2003), abrogated on other grounds by *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156 (2d Cir. 2010), (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)) (brackets omitted). "The reasoning behind the objective standard is that . . . Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal." *Key Mech.*, 330 F.3d at 117-18 (quotation marks omitted). A debtor should not

12

be forced or pressured to pay a disputed debt upon the commencement of an involuntary bankruptcy case. *See In re Stillwater Asset Backed Offshore Fund Ltd.*, 485 B.R. 498, 505 (Bankr. S.D.N.Y. 2013).

Although a bankruptcy court must determine whether a bona fide dispute exists, "it is not called on to resolve such dispute." *Id.* That being said, the court may address the merits of the dispute and it "may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists." *Id.* (quoting *In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991)). The court may hold an evidentiary hearing if necessary. Petitioners bear the burden of establishing a prima facie case that no bona fide dispute exists. *See Stillwater*, 485 B.R. at 505; *Key Mech.*, 330 F.3d at 118. Once a prima facie case has been established, the burden shifts to the putative Debtors to demonstrate the existence of a bona fide dispute. *See id.*

Pending litigation over a claim strongly suggests, but does not establish, the existence of a bona fide dispute. *See, e.g.*, *Shinko v. Miele*, 29 Fed. App'x. 890 (3d Cir. 2002) (holding that a bona fide dispute existed where the alleged claim had been "seriously contested in many rounds of state court litigation"); *Adell v. John Richards Homes Bldg. Co., L.L.C. (In re John Richards Homes Bldg. Co., L.L.C.)*, 312 B.R. 849, 853 (E.D. Mich. 2004) (filings by putative debtor in pending litigation, such as an answer denying claims and asserting affirmative defenses, indicated bona fide dispute), *aff'd*, 439 F.3d 248 (6th Cir. 2006); *In re C&C Dev. Gr., LLC*, No. 11-32362-BKC-AJC, 2012 WL 1865442, at *2 (Bankr. S.D. Fla. May 22, 2012) ("This case should be dismissed under 11 U.S.C. §303(b) because [petitioning creditor's] claim asserted in the Involuntary Petition is the subject of numerous bona fide disputes as to liability and amount which are being litigated in the pending State Court Action."). In particular, "the existence of

affirmative defenses may suggest that a bona fide dispute exists." *Liberty Tool Mfg. v. Vortex Fishing Sys., Inc. (In Re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1067 (9th Cir. 2002) (citing 2 COLLIER ON BANKRUPTCY ¶ 303.03(2)(b)(I), at 303-23 (15th ed. rev. 1998)).

### 2. *A Bona Fide Dispute Exists Here*

Petitioners have failed to meet their burden of showing that a bona fide dispute does not exist. The plethora of ongoing litigation that involves the same nucleus of facts speaks strongly to the likelihood that there is a bona fide dispute in this case. There are three New York actions that are still ongoing in which the Troy Entities are named defendants—two were scheduled for oral argument this month and an amended complaint was filed in the third action—and the Petitioners make the same claims against the Troy Entities in those proceedings as they do in the Involuntary Petitions.

In addition, as noted by the Petitioners and as made clear at the hearing on the Motion, the Troy Entities "vigorously" dispute the factual underpinnings of the Petitioners' alter ego claims. In particular, the Troy Entities argue that they are not liable under the contracts as alter egos of the Issuers because no facts support alter ego liability; the NY BCL does not govern the conduct of foreign entities; the Petitioners were made aware of and consented to the transactions at issue; and the Troy Entities did not engage in a fraudulent redemption transaction, as evidenced by the fact that the Notes did not go into default until three years after the Troy Entities sold their shares to Weather in a purported arms-length transaction. "The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute." *Aminian*, 2008 WL 793574, at *2 (quotation omitted). The Court finds that a bona fide—and in fact, hotly contested—dispute exists as to whether the Petitioners hold claims against the Troy Entities based on alter ego liability.

14

B.      **Abstention is Warranted Under Section 305(a)(1)**

Section 305(a)(1) of the Bankruptcy Code permits a bankruptcy court to dismiss any bankruptcy case where "the interests of creditors and the debtor would be better served by such dismissal . . ." 11 U.S.C. § 305(a)(1). This Court has considered the following factors in rendering an abstention decision under Section 305(a):

1) The economy and efficiency of administration;
2) Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;
3) Whether federal proceedings are necessary to reach a just and equitable solution;
4) Whether there is an alternative means of achieving an equitable distribution of assets;
5) Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
6) Whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
7) The purpose for which bankruptcy jurisdiction has been sought.

*In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464-65 (Bankr. S.D.N.Y. 2008) (citing cases). "While all factors are considered, not all are given equal weight in every case." *Id*. at 465. "The decision to abstain under § 305(a)(1) should be made on a case-by-case basis." *Id.* at 464 (citations omitted).

The Debtors have met their burden of showing that abstention is proper under section 305(a). First, another forum—in fact, multiple forums—are available to protect the interests of both parties, as there are several proceedings already pending in state and federal courts (factor 2). In addition, federal proceedings are not necessary because the primary claims at issue are based on state law and these alter ego claims can be adequately determined in the state court

15

proceedings (not to mention the transactions occurred beyond the reach-back periods for federal bankruptcy avoidance law) (factor 3). Third, a foreign insolvency proceeding is already underway (factor 6). Last, it is questionable whether the bankruptcy proceeding was filed for a proper purpose; Petitioners are pursuing the same exact claims in many other venues that they are pursuing in this Court (factor 7).

### C.    Other Potential Grounds for Dismissal

As discussed above, the Troy Entities assert that because they have been dissolved and no longer exist, there are grounds for dismissal under sections 303(h)(1) and 303(a) of the Code. Section 303(h)(1) of the Bankruptcy Code provides, in relevant part, that "the court shall order relief against the debtor in an involuntary case . . . only if – the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1). "The petitioning creditors have the burden of proving . . . that the debtor is generally not paying its bills on time." *In re A&J Quality Diamonds, Inc.*, 377 B.R. 460, 463 (Bankr. S.D.N.Y. 2007) (citing *In re Palace Oriental Rugs, Inc.*, 193 B.R. 126, 129 (Bankr. D. Conn. 1996)). Once this burden is met, the burden shifts to the putative debtor to show that there is a dispute as to a material fact, such as the existence of the liability or its amount. *See A&J Quality Diamonds*, 377 B.R. at 463.

Section 303(a) provides: "An involuntary case may be commenced . . . only against a person . . . *that may be a debtor* under the chapter under which such case is commenced." 11 U.S.C. § 303(a) (emphasis added). Entities with no continued existence after dissolution generally cannot be debtors under the Bankruptcy Code. *See In re Soderberg & Schafer CPAS, LLC*, 441 B.R. 262, 266 (Bankr. N.D. Ohio 2010) (dismissing claims brought against a wound-up entity but stating that "[a] company's certificate of cancellation [may be] nullified on the

ground that the company was not 'wound up' in compliance with Delaware law"); *In re Segno Commc'ns, Inc.*, 264 B.R. 501, 507 (Bankr. N.D. Ill. 2001) ("Once state law says that the corporation is dead, [w]e know of no rule of bankruptcy which has the power of resurrection . . . Thus, if the result of dissolution is an end to the existence of the corporation, it may be likened to the death of a natural person.") (internal citations and quotation marks omitted); *but see In re Collins v. Kohlbert & Co. (In re Southwest Supermarkets, LLC),* 325 B.R. 417, 431 (Bankr. D. Ariz. 2005) (denying dissolved and cancelled defendants' motion to dismiss where counsel was retained).

In order dismiss these cases under section 303(h) or 303(a), the Court would likely have to determine whether the Troy Entities are liable as alter egos for the Issuer's debts and whether their dissolution was improper, both of which are contested issues. Because the Court finds two other grounds upon which to dismiss these cases, it is not necessary to delve into these fact-intensive inquiries.

### D. Fees, Costs and Damages under Section 303(i)

Section 303(i) provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment (1) against the petitioners and in favor of the debtor for (A) costs; or (B) a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for (A) any damages proximately caused by such filing; or (B) punitive damages.

11 U.S.C. § 303(i).

There is a presumption that costs and attorney's fees will be awarded to a putative debtor where an involuntary petition is dismissed. The petitioner bears the burden of proof on justifying a denial of costs and fees. *See In re Mountain Dairies*, 372 B.R. 623, 637 (Bankr. S.D.N.Y.

2007) (quoting *In re Squillante*, 259 B.R. 548, 553-54 (Bankr. D. Conn. 2001)); *see also In re Skyworks Ventures, Inc.*, 431 B.R. 573, 576 (Bankr. D.N.J. 2010) (awarding fees and costs is the "majority rule"); *In re Silverman*, 230 B.R. 46, 50 (Bankr. D.N.J. 1998) (attorneys' fees and costs are "typically . . . awarded upon dismissal" of an involuntary petition). "[B]ad faith is not a prerequisite to an award of costs and attorney's fees under § 303(i)(1)." *Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 105 (2d Cir. 2000). Instead, "the exercise of the court's discretion is based on the totality of the circumstances . . ." *Mountain Dairies*, 372 B.R. at 637 (quoting *Squillante*, 259 B.R. at 553-54).

The Court will address whether the Troy Entities are entitled to costs, reasonable attorney's fees and damages upon a proper showing in a separate application which must be filed within twenty-one (21) days after the date of this Order. The Petitioners may file a response to such application not later than seven (7) days after the application is filed.

### III.    CONCLUSION

For the reasons stated above, the Motion is **GRANTED** and the involuntary chapter 7 petitions filed in the above-referenced cases are hereby **DISMISSED**.

**IT IS SO ORDERED.**

Dated:    May 9, 2013
          New York, New York

                                          ___*Martin Glenn*_____
                                          MARTIN GLENN
                              United States Bankruptcy Judge