UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re:<br><br>TPG TROY, LLC,<br><br>Debtor. | NOT FOR PUBLICATION<br><br>Chapter 7<br><br>Case No. 12-14965 |
|---|---|
| In re:<br><br>T3 TROY, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 12-14966 |

**MEMORANDUM OPINION GRANTING AWARD OF ATTORNEYS' FEES AND
DENYING REQUEST FOR PUNITIVE DAMAGES**

*A P P E A R A N C E S:*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Counsel for the Alleged Debtors*
1633 Broadway
New York, New York 10019
By:   Andrew K. Glenn, Esq.
        Michele Angell, Esq.

STAMELL & SCHAGER, LLP
*Counsel for the Petitioning Creditors,*
*SPQR Capital (Cayman) Ltd., Lansdowne*
*Capital SA, and Crest One SpA*
1 Liberty Plaza, 35th Floor
New York, New York 10006
By:   Jared B. Stamell, Esq.
        Andrew R. Goldenberg, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is TPG Troy, LLC and T3 Troy, LLC's (the "Troy Entities") *Motion for Attorneys' Fees, Costs and Damages Pursuant to 11 U.S.C. § 303(i)* (the "Motion," ECF Doc. # 46).[1]  The Motion is supported by the declaration of Michele L. Angell (ECF Doc. # 47).  The Motion was filed in response to the decision of this Court dismissing the involuntary chapter 7 bankruptcy petition filed by the Petitioning Creditors.  *See In re TPG Troy, LLC*, 492 B.R. 150, 162 (Bankr. S.D.N.Y. 2013) ("The Court will address whether the Troy Entities are entitled to costs, reasonable attorney's fees and damages upon a proper showing in a separate application which must be filed within twenty-one (21) days after the date of this Order.").

The Petitioning Creditors filed a response (ECF Doc. # 62), as well as a motion for a jury trial and a motion to withdraw the reference (ECF Doc. ## 50, 56 and 57).  The Petitioning Creditors also filed two declarations of Jared B. Stamell, one regarding "Improper Conduct by Debtors," and the other regarding "Pre-Filing Investigation."  (ECF Doc. ## 60 and 61.)

The Troy Entities filed a response (ECF Doc. # 66), supported by the declarations of Michael M. Fay and Michele L. Angell (ECF Doc. ## 67 and 68).

The motion to withdraw the reference remains pending in the district court, but the pendency of that motion does not stay the administration of the case in the bankruptcy court.  *See* FED. R. BANKR. P. 5011(c).  With respect to the demand for a jury trial, counsel for the Petitioning Creditors consented at the hearing on the Motion to the Court determining the amount of attorneys' fees and costs (without a jury), but continued to press the argument that the Petitioning Creditors are entitled to a jury to the extent that an award of punitive damages is

---

[1]  The pleadings in both cases are substantially the same.  Accordingly, all docket citations correspond to the docket entries in Case No. 12-14965.

2

concerned.[2] As explained below, the Court in the exercise of its discretion declines to award punitive damages to the Troy Entities, making the issue of the jury demand moot.

For the reasons explained below, the Court grants the Troy Entities' motion for attorneys' fees and costs in the amount of $513,427.16 pursuant to section 303(i)(1) of the Bankruptcy Code.

## I.    BACKGROUND

On December 21, 2012, the Petitioning Creditors commenced these cases by filing involuntary petitions against the Troy Entities. The involuntary cases were based on vigorously contested litigation commenced by the Petitioning Creditors' purported assignee against the Troy Entities and others over the last three years in eleven prior lawsuits, of which seven are still pending (collectively, the "Prior Lawsuits").

The Petitioning Creditors have filed almost all the Prior Lawsuits using virtually identical complaints, against nearly identical groups of defendants, in jurisdictions spanning from New York to Delaware to California to Luxembourg. The Prior Lawsuits allege losses incurred as a result of defaulted PIK Notes and Sub Notes issued by Luxembourg subsidiaries of Hellas, a Luxembourg company limited by shares. The Troy Entities were two of eight entities that

---

[2] The following colloquy took place at the June 28, 2013 hearing:

> THE COURT: Do you agree that your client is not entitled to a jury trial on the issue of attorneys' fees and costs under 303(i)(1)?
> MR. STAMELL: May I answer it the following way, that under those circumstances, we would not find it necessary to argue the point of whether there is a jury—a right to a jury.
> THE COURT: So absent punitive damages, you agree that your client either is not entitled or doesn't demand a jury with respect to attorneys' fees and costs under 303(i)(1), correct?
> MR. STAMELL: I don't want to waive the argument I'm not entitled but we would not—we would be content to consent to Your Honor determining the fees.

June 28, 2013 Hearing Tr. 39:7-20.

3

owned a portion of Hellas when the Notes were issued by Hellas subsidiaries. The issuers of those Notes—who are *not* the Troy Entities—defaulted nearly three years after their issuance, and two and a half years after the Troy Entities sold their interests in Hellas to an unaffiliated third party for substantial value above the amount of Hellas' debt.

On January 14, 2013, the Troy Entities' counsel sent Petitioning Creditors' counsel a letter with a discussion of Bankruptcy Code sections 303(b), (h), and (i), noting that the Troy Entities disputed their claims, and offering them the opportunity to withdraw the Involuntary Petitions with no section 303(i)(1) penalty. The Petitioning Creditors initially responded to the January 14 Letter on January 15, 2013, stating that they would consider the Troy Entities' position. However, on January 22, 2013, Petitioning Creditors requested, and this Court issued, a second involuntary summons in each case. Then, on February 12, 2013, Petitioning Creditors filed Bankruptcy Rule 2004 motions ("Rule 2004 Motions") seeking immediate examination of the Troy Entities and several non-debtors (the "Non-Debtor 2004 Parties").

On February 15, 2013, the Troy Entities timely filed their motions to dismiss the involuntary petitions. In their motions, the Troy Entities noticed the Petitioning Creditors' objection deadline for March 11, 2013. On February 17, 2013, the Troy Entities also requested that the Petitioning Creditors agree to hold the Rule 2004 Motions in abeyance pending this Court's decision on the motions to dismiss. Petitioning Creditors refused, claiming that the Rule 2004 Motions should be heard particularly because of the Troy Entities' decision to file their motions to dismiss. Accordingly, on February 25, 2013, the Troy Entities and Non-Debtor 2004 Parties filed an objection to the Rule 2004 Motions, incurring additional attorneys' fees. In the Rule 2004 Objection, the Troy Entities expressly requested that the Court consider the Rule 2004 Motions and Objection with respect to any section 303(i) award the Court later issued.

4

On March 4, 2013, this Court denied the Rule 2004 Motions without prejudice pending a hearing and decision on the Troy Entities' motions to dismiss. (ECF Doc. # 23.) Still undeterred in their quest to obtain discovery, Petitioning Creditors served the Troy Entities the next day with discovery requests purportedly under Federal Rule of Civil Procedure 34, demanding production by April 7, 2013 of many of the same types of documents about which the Court denied discovery in the Rule 2004 Order.

Also on March 4, 2013, just one week before their deadline, Petitioning Creditors' counsel requested from the Troy Entities an extension until March 22, 2013 to respond to the motions to dismiss, and proposed that the Troy Entities reply by April 5, 2013. The Troy Entities' counsel explained that while they could reply by the April 5 deadline under the schedule, an April 5 reply deadline would be overly burdensome if they received the Petitioning Creditors' objection on March 22 because Passover fell on March 25 through April 2. The Troy Entities' counsel offered the Petitioning Creditors an extension until March 15, which the Petitioning Creditors refused. Instead, on March 7, 2013, the Petitioning Creditors requested from the Court an objection deadline extension of nearly a month, until April 8, 2013.

On March 11, 2013, the Court denied the Petitioning Creditors' request, and set the objection deadline to March 15, 2013. The Petitioning Creditors sent the Court another letter requesting a further extension. Upon consent of the Troy Entities, the Court granted an extension until March 18, 2013, at noon.

On March 18, 2013, Petitioning Creditors filed their objection. The Troy Entities timely filed a reply on April 5, 2013, as well as the Abrams Declaration in support thereof. On the same day, the Troy Entities also responded and objected to the Petitioning Creditors' March 5, 2013 discovery requests, incurring additional attorneys' fees.

5

On April 29, 2013—two days before the hearing on the motions to dismiss—Petitioning Creditors filed an unauthorized sur-reply (the "Sur-Reply"). Petitioning Creditors annexed declarations (the "Declarations") to the Sur-Reply of alleged additional noteholders purporting to support the involuntary cases, none of which had joined under section 303(c) of the Bankruptcy Code. Petitioning Creditors never asked either the Troy Entities or the Court for permission to file a sur-reply in the many rounds of negotiations surrounding the scheduling orders. On May 1, 2013, the Troy Entities moved to strike the Sur-Reply and Declarations, and during the hearing on the motions to dismiss that same day, the Court struck the Sur-Reply on the record after Petitioning Creditors invited the Court to do so. *See* May 1, 2013 Hearing Tr. 23:23-24:8.

On May 9, 2013, the Court dismissed the involuntary petitions ("Dismissal Opinion"), finding that Petitioning Creditors' claims were subject to a *bona fide* dispute, and also concluding that the Court would abstain under section 305(a) in any event. *In re TPG Troy, LLC*, 492 B.R. at 160-61. In addition, the Court authorized the Troy Entities to file this Sanctions Motion within twenty-one days. *Id.* at 162. On May 22, 2013, Petitioning Creditors filed a notice of appeal of the Dismissal Opinion (ECF Doc. ## 45).

By their Motion, the Troy Entities seek reasonable attorneys' fees pursuant to Bankruptcy Code section 303(i)(1) in the total amount of $513,427.16 (*see* ECF Doc. # 46, Ex. A, and ECF Doc. # 75). In addition, the Troy Entities seek a punitive damages award of two times attorneys' fees and costs under Bankruptcy Code section 303(i)(2).

In their objection to the Motion, the Petitioning Creditors argue that they filed the involuntary petition in good faith, as they were trying to preserve the statute of limitations for non-Petitioning Creditor holders of the Subordinated Notes. They also accuse Kasowitz, Benson, Torres & Friedman LLP ("KBT&F") of improper conduct, specifically, that KBT&F

6

was the agent of Debtors and their affiliates when it also acted as the lawyers for the Subordinated Noteholders, thereby creating a conflict of interest.[3] The Petitioning Creditors also argue that the Debtors must prove bad faith by clear and convincing evidence, and that liability and damages are issues for a jury. They also argue that they have already made a motion to withdraw the reference and requested a jury trial on this motion in the Southern District of New York.[4] In addition, the Petitioning Creditors take issue with the size of the Troy Entities' counsel's attorneys' fees, and argue against an award of punitive damages by alleging that the Debtors have not applied the proper standard set forth by the Supreme Court in making a punitive damages award determination (*see* Opposition at 20).[5]

The Court held a hearing on the Motion on June 28, 2013. Parties submitted additional materials to the Court on July 12, 2013 (ECF Doc. # 77, 78).

---

[3] The Petitioning Creditors did not file a motion to disqualify the Troy Entities' counsel. Based on the record in this Court, there is no basis for such relief in any event.

[4] In an Order entered on June 20, 2013, the Court denied the Petitioning Creditors' motion for a stay of the bankruptcy proceeding pending decision by the district court on the motion to withdraw the reference and for an order granting them a jury trial. (ECF Doc. # 64.) With respect to the motion for a jury trial, the June 20 Order also concluded that rules permit the bankruptcy court to determine, on its own motion or the motion of a party, whether the Petitioning Creditors are entitled to a jury trial. *Id.* at 1-2.

[5] Petitioning Creditors also contend the sanctions motion should be deferred because the Debtors' motion requests this Court to decide issues identical to the ones appealed, and would directly affect the outcome of the appeal, or alter the scope of the order of dismissal. Petitioning Creditors' "Divestiture Rule" argument is entirely without merit. It is well-established that, absent a stay pending appeal, lower courts retain jurisdiction "to decide issues and proceedings different from and collateral to those involved in the appeal." *See In re Board of Dirs. Of Hopewell Int'l Ins. Ltd.,* 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001) (citing *In re Allen-Main Assocs., Ltd. P'ship*, 243 B.R. 606, 608-09 (D. Conn. 1998)). A bankruptcy court also retains jurisdiction, absent a stay pending appeal, to enforce the order or judgment appealed from, because in so doing, "the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review." *Hopewell*, 258 B.R. at 583 (quoting *In re Prudential Lines, Inc.*, 170 B.R. 222, 243 (S.D.N.Y. 1994), *appeal dismissed*, 59 F.3d 327 (2d Cir. 1995)). In addition, section 303(i) case law is clear that an appeal of an involuntary case dismissal does not divest the bankruptcy court of jurisdiction to rule on attorney's fees, costs and damages under section 303(i). *See In re VII Holdings Co.,* 362 B.R. 663, 666 n.3 (Bankr. D. Del. 2007) (holding that the concept of lower courts retaining jurisdiction absent a stay pending appeal "has been extended to motions for damages under section 303(i) following an appeal of a dismissal order"); *see also Allen-Main Assocs.,* 243 B.R. at 608-09.

7

## II.    DISCUSSION

### A. The Troy Entities are Awarded Reasonable Attorneys' Fees Pursuant to Section 303(i)(1)

Bankruptcy Code section 303(i) reads as follows:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment –
>
> (1) against the petitioners and in favor of the debtor for –
>   (A) costs; or
>   (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for –
>   (A) any damages proximately caused by such filing; or
>   (B) punitive damages.

"There is a presumption that costs and attorneys' fees will be awarded to a putative debtor where an involuntary petition is dismissed. The petitioner bears the burden of proof on justifying a denial of costs and fees." *TPG Troy*, 492 B.R. at 162 (citing *In re Mountain Dairies*, 372 B.R. 623, 637 (Bankr. S.D.N.Y. 2007)); *see also In re Skyworks Ventures, Inc.*, 431 B.R. 573, 576 (Bankr. D.N.J. 2010) (awarding attorneys' fees and costs is the "majority rule"); *In re Silverman*, 230 B.R. 46, 50 (Bankr. D.N.J. 1998) (fees and costs are "typically . . . awarded upon dismissal" of an involuntary petition); *In re K.P. Enter.*, 135 B.R. 174, 177 (Bankr. D. Me. 1992) (fairness dictates that attorney's fees and costs generally should be awarded upon an involuntary case's dismissal).

Moreover, "[u]nder the terms of the statute, bad faith is not a prerequisite to an award of costs and attorney's fees under § 303(i)(1)." *Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 105 (2d Cir. 2000). Because section 303(i)(1) is a "fee-shifting provision," attorneys' fees and costs incurred in preparing and

8

litigating the section 303(i) motion itself may be included in the award. *See Orange Blossom Ltd. P'ship v. S. Cal. Sunbelt Developers, Inc. (In re S. Cal. Sunbelt Developers, Inc.)*, 608 F.3d 456, 461-62 (9th Cir. 2010).

In deciding whether to award fees, costs and actual damages:

> Most of the courts . . . have adopted a "totality of the circumstances" test, in which certain factors are to be considered. These include (1) the merits of the involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3) the reasonableness of the actions taken by the petitioning creditors; and (4) the motivation and objectives behind the filing of the petition.

*In re Taub*, 438 B.R. 761, 775 (Bankr. E.D.N.Y. 2010) (quoting 2 COLLIER ON BANKRUPTCY ¶ 303.11 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.)).

Based on the totality of the circumstances, the Court grants the Troy Entities' motion for their attorneys' fees. Petitioning Creditors have put forward no evidence to rebut the presumption that the Troy Entities are entitled to an award of attorneys' fees. All parties to the involuntary petitions have been embroiled in countless lawsuits over the same claims in forums spanning from New York to Luxembourg. In addition, much of the work that is the subject of the request for attorneys' fees arises out of conduct initiated by Petitioning Creditors. The Troy Entities' counsel had no choice but to defend or respond to the various actions taken by Petitioning Creditors throughout this dispute. Moreover, a finding of bad faith is not required for a court to award reasonable attorneys' fees under this section. Accordingly, the Troy Entities' request for attorneys' fees under section 303(i)(1) of the Bankruptcy Code is granted. The Court has carefully reviewed the fee application and concludes that the amount of fees and costs sought in this case are reasonable under the circumstances.

9

### B. The Court Declines to Award Punitive Damages under § 303(i)(2) and Therefore the Issue of Petitioning Creditors' Entitlement to a Jury Trial is Moot

Section 303(i)(2) of the Bankruptcy Code gives the Court discretion to award punitive damages upon a finding that the involuntary petition was filed in bad faith. "Because 'bad faith' is not defined in the [B]ankruptcy [C]ode, and because there is no legislative history addressing the intended meaning of this language, courts have used different approaches to determine whether a petition was filed in bad faith for purposes of § 303(i)(2)." *Bayshore Wire Prods.*, 209 F.3d at 105 (brackets omitted). Moreover, petitioning creditors are presumed to have acted in good faith by filing an involuntary petition, and the objecting party has the burden of proving bad faith. *See In re Synergistic Techs., Inc.,* No. 07-31733-SGJ-7, 2007 WL 2264700, at *6 (Bankr. N.D. Tex. Aug. 6, 2007); *In re Reveley,* 148 B.R. 398, 406 (Bankr. S.D.N.Y. 1992). It is unclear whether the standard of proof for establishing bad faith is clear and convincing evidence or preponderance of the evidence. *In re Synergistic Techs., Inc.,* 2007 WL 2264700, at *6-7 (preponderance of the evidence); *In re Reveley,* 148 B.R. at 406 (same); *but see Revson v. Cinque & Cinque,* 221 F.3d 71, 79 (2d Cir. 2000) (concluding that "bad faith" must be shown to impose sanctions under inherent power of the court or 28 U.S.C. § 1927, and "to impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes"); *In re Green*, 422 B.R. 469, 474 (Bankr. S.D.N.Y. 2010) (in awarding sanctions under inherent power of the court, the court must find bad faith based on clear evidence).

It is unclear whether the Court would need to hold an evidentiary hearing to determine whether the Petitioning Creditors acted in bad faith in filing the involuntary cases. However, the Court need not address this issue because it declines to award punitive damages against the Petitioning Creditors. Section 303(i)(2) clearly states that the Court "may" grant judgment for

10

punitive damages for a bad faith filing. The Troy Entities' counsel acknowledged at the hearing that an award of punitive damages under section 303(i)(2) is discretionary. *See* June 28, 2013 Hearing Tr. 15:5-8. The amount of attorneys' fees and costs awarded by the Court in this case is very substantial and will hopefully serve as a deterrent to similar misconduct in the future. The aggressive litigation conduct by Petitioning Creditors' counsel has substantially increased the attorneys' fees and costs expended to defend the Troy Entities against the improperly filed involuntary petitions.[6]

Given that the Court has declined to award punitive damages to the Troy Entities, the Court need not decide whether Petitioning Creditors have a right to a jury trial on the issue of punitive damages.

### III.    CONCLUSION

Accordingly, for the reasons set forth above, the Court grants the Troy Entities' motion for attorneys' fees and costs in the amount of $513,427.16, but does not award punitive damages. Counsel for the Troy Entities should prepare a judgment consistent with this opinion.

Dated: July 18, 2013
      New York, New York

                                        *Martin Glenn*
                                        MARTIN GLENN
                                 United States Bankruptcy Judge

---

[6] At the June 28, 2013 Hearing, counsel for the Petitioning Creditors sought to raise an argument for the first time that the attorneys' fees were not reasonable because they were billed to Texas Pacific Group, Ltd., and not the Troy Entities. The issue was not raised in the parties' briefs and the Court declined to consider the argument. The Troy Entities were previously dissolved, but that did not deter the Petitioning Creditors from filing the involuntary petitions. That the Troy Entities' affiliates were paying for the defense of improperly filed involuntary petitions is not a basis for denying reimbursement for attorneys' fees and costs for successfully mounting the defense. The Petitioning Creditors should not be able to wage their global war without consequences.